IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ANGELA EARLINE KENNEDY-GARNETT, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:14CV198 |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Angela Earline Kennedy-Garnett, brought this action pursuant to Section 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Supplemental Security Income ("SSI") under Title XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.  PROCEDURAL HISTORY

Plaintiff filed an application for SSI on September 28, 2010, alleging a disability onset date of August 11, 2010. (Tr. at 17.)[1] Her application was denied initially and upon reconsideration. (Tr. at 110, 128.) Thereafter, Plaintiff requested a hearing de novo before

---

[1] Transcript citations refer to the Sealed Administrative Transcript of Record [Doc. #7]. The Court notes that Plaintiff's Complaint alleges that she filed a claim for both SSI and Disability Insurance Benefits ("DIB"), but in the Answer, Defendant contends that Plaintiff filed an application for SSI. The record in this case omits Plaintiff's application for SSI but includes an application for DIB, dated October 8, 2010, which is mentioned nowhere else in the record or in the parties' filings. (Tr. at 197-200.)

an Administrative Law Judge ("ALJ"). (Tr. at 156-57.) Following the subsequent hearing on January 3, 2013 (Tr. at 30-63), ALJ Kelly Davis issued a decision finding Plaintiff not disabled within the meaning of the Act (Tr. at 17-26).[2] On January 2, 2014, the Appeals Council denied review, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-5).

II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

---

[2] Plaintiff previously filed unsuccessful claims for both DIB and SSI in 2002 and 2008, and the record includes the ALJs' decisions denying these claims. (Tr. at 64-95.)

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her alleged onset date. She therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments: morbid obesity, obsessive-compulsive disorder ("OCD"), major depressive disorder, and agoraphobia with panic disorder. The ALJ found at step three that these impairments did not meet or equal a disability listing. (Tr. at 19.) Therefore, she assessed Plaintiff's RFC and determined that Plaintiff could "perform medium work as defined in 20 C.F.R. § 416.967(c) except she can understand, remember, and carry out simple, routine, repetitive tasks; she cannot perform production or assembly line work; and she cannot have contact with the general public." (Tr. at 21.) At step four of the analysis, the ALJ found that Plaintiff's past relevant work exceeded her RFC. (Tr. at 24.)

5

However, based on the testimony of a vocational expert, the ALJ concluded at step five that Plaintiff could perform other jobs that exist in significant numbers in the national economy and therefore was not disabled. (Tr. at 25-26.)

Plaintiff now challenges the ALJ's RFC assessment in three respects. Specifically, she contends that the ALJ (1) incorrectly weighed the opinion of Plaintiff's treating psychiatrist, Dr. Dinesh Benjamin, (2) improperly made certain credibility determinations, and (3) erred in rejecting a third party function report solely because it was prepared by Plaintiff's friend. Because the Court agrees that the ALJ's improper treatment of Dr. Benjamin's medical source statement merits remand, the Court need not consider the additional issues raised by Plaintiff at this time.

Plaintiff first claims that the ALJ failed to properly analyze the opinion of Dr. Benjamin, her treating psychiatrist, under 20 C.F.R. § 416.927(c), better known as the "treating physician rule." This rule generally requires an ALJ to give controlling weight to the opinion of a treating source as to the nature and severity of a claimant's impairment, based on the ability of treating sources to

> provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 416.927(c). However, if a treating source's opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record," it is not entitled to controlling weight. See Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5; 20 C.F.R. § 416.927(c)(2); see

also Craig, 76 F.3d at 590; Mastro, 270 F.3d at 178.  Instead, the opinion must be evaluated and weighed using all of the factors provided in 20 C.F.R. § 416.927(c)(2)(i)-(c)(6), including (1) the length of the treatment relationship, (2) the frequency of examination, (3) the nature and extent of the treatment relationship, (4) the supportability of the opinion, (5) the consistency of the opinion with the record, (6) whether the source is a specialist, and (7) any other factors that may support or contradict the opinion.

Where an ALJ does not give controlling weight to a treating source opinion, she must "give good reasons in [her] . . . decision for the weight" assigned, taking the above factors into account.  20 C.F.R. § 416.927(c)(2).  "This requires the ALJ to provide sufficient explanation for 'meaningful review' by the courts." Thompson v. Colvin, No. 1:09CV278, 2014 WL 185218, at *5 (M.D.N.C. Jan. 15, 2014) (quotations omitted); see also SSR 96-2p (noting that the decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight").

Finally, even if an opinion by a treating physician is given controlling weight with respect to the nature and severity of a claimant's impairment, opinions by physicians regarding the ultimate issue of whether a plaintiff is disabled within the meaning of the Act are never accorded controlling weight because the decision on that issue is reserved for the Commissioner alone.  20 C.F.R. § 416.927(d).

In the present case, Dr. Benjamin completed a medical source statement on January 9, 2013, in which he opined that Plaintiff had moderate restrictions in activities of daily

7

Case 1:14-cv-00198-LCB-JEP   Document 14   Filed 07/09/15   Page 7 of 13

living, moderate difficulties in maintaining social functioning, and frequent deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner. (Tr. at 23, 337.) Dr. Benjamin also opined that Plaintiff was "extremely impaired" in her ability to: work in coordination and proximity with others without being distracted, to make simple work-related decisions, to interact appropriately with the general public, and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace. (Id.) The ALJ gave this assessment "limited weight in light of the claimant's moderate GAF scores and conservative medication management of her symptoms." (Tr. at 23.) In particular, the ALJ noted that Plaintiff maintained a Global Assessment of Functioning, or GAF, score of 55 throughout the time period at issue, and "has only been seen every few months for medication management primarily according to Carolina Behavioral Care notes." (Tr. at 23, 308, 321, 327, 330, 332, 334.) Plaintiff counters that "[t]he rejection of a treating physician's opinion must be based on 'persuasive contradictory evidence,'" and that the bases cited by the ALJ are insufficient. (Pl.'s Br. [Doc. #10] at 5.) As explained below, the Court agrees that Dr. Benjamin's medical source statement merits further consideration on remand.

Until 2013, mental health clinicians commonly used GAF scores to estimate an individual's overall functioning level at a given point in time. Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 32 (4th ed. 2000)). A score between 51 and 60, such as Plaintiff's, indicated "Moderate symptoms (e.g. flat affect and circumlocutory speech, occasional panic attacks) *or* moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." Id. at 34. In contrast, a

score between 41 and 50 indicated "Serious symptoms," which may include "severe obsessional rituals" or the inability to keep a job. Id. However, even during their years of wide usage in the mental health field, GAF scores had "no direct legal or medical correlation to the severity requirements of social security regulations." Powell v. Astrue, 927 F. Supp. 2d 267, 273 (W.D.N.C. 2013) (citing Oliver v. Comm'r of Soc. Sec., 415 Fed. App'x 681, 684 (6th Cir. 2011)). Rather, they were "intended to be used to make treatment decisions." Powell, 927 F. Supp. 2d at 273 (citations omitted).

As detailed in a prior decision in this District in Emrich v. Colvin, the usefulness of GAF scores in the social security context came under further scrutiny when, in May 2013,[5]

> the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders ("DSM") abandoned the use of GAF scoring altogether. Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 16 (5th ed. 2013) (abandoning use of GAF scoring "for several reasons, including its lack of conceptual clarity . . . and questionable psychometrics in routine practice"). In Administrative Message 13066 (AM–13066), effective July 22, 2013, the SSA acknowledged that the DSM had abandoned use of GAF scoring and instructed ALJs that they should still consider GAF scores as opinion evidence in some circumstances. The SSA explained,
>
>> For purposes of the Social Security disability programs, when it comes from an acceptable medical source, a GAF rating is a medical opinion as defined in 20 CFR §§ 404.1527(a)(2) and 416.927(a)(2). An adjudicator considers a GAF score with all of the relevant evidence in the case file and weighs a GAF rating as required by 20 CFR §§ 404.1527(c), 416.927(c), and SSR 06–03p, while keeping the following in mind:
>>
>> The GAF is unlike most other opinion evidence we evaluate because it is a rating. However, as with other opinion evidence, a GAF needs supporting evidence to be given much weight. By itself, the GAF cannot be used to "raise" or "lower" someone's level of function. The GAF is only a snapshot opinion about

---

[5] The ALJ issued her decision in this case on January 17, 2013, and therefore did not have the benefit of the SSA's further guidance.

9

the level of functioning. It is one opinion that we consider with all the evidence about a person's functioning. Unless the clinician clearly explains the reasons behind his or her GAF rating, and the period to which the rating applies, it does not provide a reliable longitudinal picture of the claimant's mental functioning for a disability analysis.

A GAF score is never dispositive of impairment severity.

Emrich v. Colvin, __ F. Supp. 3d __, 2015 WL 867287, at *10 (M.D.N.C. Mar. 2, 2015) (Schroeder, J.) (quoting AM-13066). Accordingly, courts have found that "inconsistent GAF score[s] alone, without further context and additional evidence, [are] insufficient to discount a treating physician's opinions." Parker v. Colvin, No. 0:12-cv-00153-DCN, 2014 WL 4793711, at *3-4 (D.S.C. Sept. 25, 2014); see also Noble v. Colvin, No. CV-13-00113-JTR, 2014 WL 1883799, at *6-9 (E.D. Wash. May 12, 2014).

In the present case, the ALJ placed great emphasis on Plaintiff's GAF scores when discounting Dr. Benjamin's opinion that Plaintiff had moderate restrictions in activities of daily living, moderate difficulties in maintaining social functioning, and frequent deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner. (Tr. at 23.) However, the ALJ provided no explanation as to how Dr. Benjamin's finding of moderate restrictions conflict with his assignment of a moderate GAF score, nor does she explain why Dr. Benjamin's finding of frequent deficiencies of concentration, persistence, and pace were so inconsistent with his own findings and the record as a whole as to support the assignment of "limited weight" to his entire opinion. See Noble, 2014 WL 1883799, at *6 (finding that, given the relevant definitions, "it is not clear that a person could never simultaneously have marked impairments and a moderate GAF score").

10

Case 1:14-cv-00198-LCB-JEP   Document 14   Filed 07/09/15   Page 10 of 13

Notably, Dr. Benjamin's treatment records chronicle that, throughout the time period at issue, Plaintiff's compulsions, particularly her repetitive behaviors, significantly impaired her ability to work. (Tr. at 319, 322, 325, 329, 331.) He specifically described her associated signs and symptoms as "compulsive checking that things are turned off or locked, feeling that something bad would happen if [she] didn't do these things[,] and needing to do certain things in a prescribed order and needing to start over if the order was wrong." (Tr. at 319, 322, 325.) These findings correlate with those of Aaron Munching, Plaintiff's mental health provider prior to Dr. Benjamin. (Tr. at 289, 291.)

The additional basis the ALJ provided for her assigned weight, i.e., Plaintiff's "conservative medication management of her symptoms," does not raise the deficient reliance on Plaintiff's GAF scores to the level of "persuasive contradictory evidence." In this regard, the Court notes that the ALJ's reference to "conservative medication management of her symptoms" is not clear, but may be a reference to the ALJ's later notation that Plaintiff "has only been seen every few months for medication management primarily according to Carolina Behavioral Care notes." (Tr. at 23.) However, the ALJ does not explain how this course of treatment was so inconsistent with Dr. Benjamin's own findings and the record as a whole as to support the assignment of "limited weight" to his entire opinion, particularly where the record clearly chronicles that Plaintiff continued to experience significant OCD symptoms during the relevant time period, and that, according to Dr. Benjamin, she declined to adjust her medications due to anxiety about making any changes, rather than the efficacy of her then-current treatment. (Tr. at 322, 324, 325, 329.) The ALJ's decision does not address or reconcile these issues.

11

Moreover, to the extent that Defendant in the briefing provides multiple potential legitimate reasons for giving limited weight to Dr. Benjamin's opinion, based on the other evidence in the record, these reasons were not given by the ALJ in assigning weight to Dr. Benjamin's opinion, and accepting Defendant's contention on this issue risks attempting to "create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself." Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005) (citing SEC v. Chenery Corp., 318 U.S. 80, 87–88, 63 S. Ct. 454, 87 L. Ed. 626 (1943)); see also Anderson v. Colvin, No. 1:10CV671, 2014 WL 1224726 at *1 (M.D.N.C. March 25, 2014) (Osteen, C.J.) (noting that this Court's "[r]eview of the ALJ's ruling is limited further by the so-called 'Chenery Doctrine,' which prohibits courts from considering post hoc rationalizations in defense of administrative agency decisions. . . . Under the doctrine, a reviewing court 'must judge the propriety of [agency] action solely by the grounds invoked by the agency. . . . If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis'").

In short, the ALJ's treatment of Dr. Benjamin's opinion lacks sufficient, specific reasons for the weight assigned, supported by the evidence in the case record.[6] Accordingly, this matter merits remand to the Commissioner for further administrative action consistent with this recommendation, 20 C.F.R. § 416.927(c), and AM-13066. When reviewing the case on remand, the ALJ may also consider each of Plaintiff's additional allegations of error.

---

[6] The Court notes that even if the ALJ properly declined to give controlling weight to Dr. Benjamin's opinion, the regulations still require an explanation of the weight ultimately given to that opinion. The decision in this case fails to provide any further consideration of the relevant factors or reviewable explanation of the weight given.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with this Recommendation. To this extent, Defendant's Motion for Judgment on the Pleadings [Doc. #12] should be DENIED, and Plaintiff's Motion for Judgment on the Pleadings [Doc. #9] should be GRANTED. However, to the extent that Plaintiff's motion seeks an immediate award of benefits, it should be DENIED.

This, the 9th day of July, 2015.

/s/ Joi Elizabeth Peake
United States Magistrate Judge